**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| YVETTE PICHLER, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br>v.<br><br>COTIVITI, INC, a Delaware corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S PRE-DISCOVERY MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE**<br><br>Case No. 2:23-cv-0884-AMA<br><br>Hon. Ann Marie McIff Allen |

Before the Court is Plaintiff Yvette Pichler's Pre-Discovery Motion For Conditional Certification and Court-Authorized Notice to Potential Opt-in Plaintiffs Pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") (the "Motion").[1] Accompanying the Motion were the declarations of Plaintiff and her co-worker (and opt-in plaintiff) Yessenia Abrams.[2] In opposition to the Motion, Defendant Cotiviti, Inc. filed a memorandum of law and submitted the declaration of Carrie Cauthorne, a senior human resource generalist at Cotiviti.[3] Plaintiff timely filed her reply in support of her Motion shortly thereafter.[4]

[1] *See* ECF 25.

[2] *See* ECF 25–4 & 25–5.

[3] *See* ECF 28 & 28–2.

[4] *See* ECF 30.

Although Cotiviti has requested oral argument and a hearing on the Motion, the Court finds that a hearing is not necessary.[5] The Court having reviewed the Motion and the relevant briefing submitted by the parties, and for reasons discussed more fully below, hereby GRANTS IN PART Plaintiff's Motion.

BACKGROUND

Plaintiff Yvette Pichler has worked as a Records Retrieval Agent (an "RRA") for Cotiviti since March 2019.[6] Plaintiff first began working in Cotiviti's McKinney, Texas call center, but at least since March 2020 she has worked remotely from her home in Allen, Texas.[7] Plaintiff is a non-exempt hourly worker paid at a rate of $19.52 per hour, who works five days per week and regularly works more than 40 hours per week.[8]

Similarly, opt-in plaintiff Yessenia Abrams is also a non-exempt hourly employee at Cotiviti. She is also employed as an RRA and has been working for Cotiviti since April 2018. Like Plaintiff, Ms. Abrams worked in Cotiviti's McKinney, Texas call center until March 2020, when she began working remotely.[9]

---

[5] *See* ECF 31. The Court finds oral argument unnecessary and decides the Motion based on the parties' written briefing. *See* DUCivR 7-1(g). The Court also denies Cotiviti's motion for leave to file a sur-reply. [ECF 31.] Plaintiff's reply did not offer new evidence or raise new legal arguments that would warrant additional briefing. *See Green v. New Mexico*, 420 F.3d 1189, 1196-97 (10th Cir. 2005).

[6] *See* ECF 1 (Compl.) at ¶¶6, 24; ECF 25-4 ("Pichler Decl.") at ¶1.

[7] *See* Compl. at ¶24.

[8] *Id*. at ¶34; Pichler Decl. ¶4.

[9] ECF 25–5 ("Abrams Decl.") at ¶1.

Ms. Abrams works five days per week and regularly works more than 40 hours per week at a rate of $19.15 per hour.[10]

Cotiviti currently employs approximately 254 RRA's in 29 states and since 2020, Cotiviti estimates it has employed 1,100 RRAs.[11] All RRAs receive and handle customer phone calls on behalf of Cotiviti and provide customer service to Cotiviti's clients by, among other things, obtaining medical records.[12] Plaintiff alleges that all RRA's typically worked five days each week up to, and on occasion more than, 40 hours per week.[13]

According to Plaintiff, she and all other RRAs were pressured to perform uncompensated "off-the-clock" work before beginning and after completing their job duties, which often pushed their weekly hours above 40 hour per week.[14] More specifically, Plaintiff alleges that before she and the other RRAs were allowed to "clock in" to start their workday they had to spend between 10–30 minutes logging in and booting up their computers and the necessary programs to perform their job duties.[15] At the end of each workday, Plaintiff alleges that she and other RRAs were instructed to clock out exactly at the end of their 8-hour shifts but that they

---

[10] *Id.* at ¶4.

[11] *See* ECF 21 ("Answer") at ¶3; ECF 28-2 ("Cauthorne Decl.") at ¶7.

[12] Pichler Decl. at ¶6; Abrams Decl. at ¶6; Answer at ¶3; Cauthorne Decl. at ¶6; Compl. at ¶35.

[13] *See* Compl. at ¶¶10, 34; Pichler Decl. at ¶4; Abrams Decl. at ¶4.

[14] *See* Compl. at ¶¶8–9, 40–45, 52–54; Pichler Decl. at ¶¶7–14; *see also* Abrams Decl. at ¶¶7–14.

[15] *See* Compl. at ¶¶8–9, 43, 45; Pichler Decl. at ¶¶9–10, 13; *see also* Abrams Decl. ¶¶9–10, 13.

had to spend at least five minutes each day, after clocking out, to perform some undefined "off-the-clock" work.[16] Plaintiff claims that Cotiviti never tracked or paid for this "off-the-clock" work and deprived Plaintiff and all other RRAs from the overtime wages they were due for this work.[17]

Based upon these allegations and the offered declarations, Plaintiff asserts that Cotiviti's practices violate the FLSA, and she seeks conditional certification for all other RRAs employed by Cotiviti wherever located. In support of her FLSA claim, Plaintiff further claims that she and all other RRAs are "similarly situated" because: "(a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories."[18] She asserts that the basic employment relationships between Cotiviti and all RRAs are the same and that the "amount of uncompensated off-the-clock time owed to each employee – does not vary substantially" among the RRAs.[19] And she further alleges that the key legal issues are the same: "(a) whether the 10-30 minutes (or more) of required pre-shift off-the-clock time amounted to compensable overtime under the FLSA; (b) whether the 5 minutes (or more) of required post-shift off-the-clock time

[16] Compl. at ¶52; Pichler Decl. ¶14; *see also* Abrams Decl. ¶14.

[17] Compl. at ¶59; Pichler Decl. at ¶¶12, 14; *see also* Abrams Decl. ¶¶12, 14.

[18] *See* Compl. at ¶61.

[19] *See id.* at ¶62.

amounted to compensable time under the FLSA; and (c) whether [Cotiviti] fulfilled its recordkeeping obligations under the FLSA."[20]

Plaintiff contends that she has substantially alleged that she and the other RRAs are similarly situated to support conditional certification so that notice may be sent to other putative opt-in plaintiffs. As noted above, Plaintiff has supported her allegations with her own declaration and the declaration of Ms. Abrams. And finally, Plaintiff also asks the court to approve forms of notice to be sent by mail, email, and text to all putative opt-in plaintiffs wherever located.[21]

For its part, Cotiviti argues that all RRAs are not similarly situated, noting that allegations and assertions that Plaintiff and Ms. Abrams "met and came to know many other Cotiviti [RRAs]" and "had multiple conversations with other [RRAs]s about Cotiviti's compensation policies . . . and [Cotiviti's] failure to pay [RRAs] for all work performed" are conclusory and hearsay.[22] Cotiviti contends that it is too broad a leap to go from those statements to the equally conclusory assumption that the Plaintiff knows that "all of Cotiviti's [RRAs] were subject to the similar pay practices and policies."[23]

Cotiviti also argues that Plaintiff failed to identify an illegal "policy" common to all RRAs that requires off-the-clock work but only alleges that she was trained to

---

[20] *See id.* at ¶63.

[21] *See* ECF 25 at 18 & Exs. A & B. For all ECF document page references the reference is to the pagination on ECF.

[22] *See* ECF 28 at 19.

[23] *Id.*

follow an unwritten protocol that requiring a 10 to 30 minutes daily to login to her computer and open software before she could clock in.[24] Citing the Cauthorne Declaration, Cotiviti asserts that its actual policy and training was to the contrary. Specifically, it claims that in 2021 and 2023 compliance training for all RRAs included an on-line course called "The Cardinal Rules of Time Keeping," which instructed RRAs not to perform any work when they are not clocked into the timekeeping system.[25] Cotiviti further claims that all RRAs are explicitly instructed not to open necessary applications before they have clocked in and are trained not to do any work after logging out.[26] And finally, Cotiviti asserts that its "Employee Handbook" states that it is "a violation of Company policy to instruct or encourage another employee to work off the clock or to incorrectly report hours worked."[27]

Even assuming certification is appropriate, Cotiviti argues that conditional certification should be limited, and notice should only be sent to those RRAs who worked out of, or through, the same McKinney, Texas call center as Plaintiff and Ms. Abrams.[28] Further, Cotiviti argues that notice should only be sent to persons who worked in the last two years as RRAs and not the last three years as Plaintiff

[24] *See* ECF 28 at 21–22.

[25] *See* ECF 28 at 9 (*citing* Cauthorne Decl. at ¶15).

[26] *See id*. (*citing* Cauthorne Decl. at ¶16).

[27] *Id*. (*citing* Cauthorne Decl. ¶25).

[28] ECF 28 at 23–25.

proposes.[29] And finally, Cotiviti claims that the proposed notice offered by Plaintiff is "flawed" and asks the court to order the parties to meet and confer regarding the form, content, and substance of notice that will be sent, to whom it will be sent, and the method by which it will be sent.[30] Among its specific objections, Cotiviti asserts that the proposed notice fails to advise the potential opt-in plaintiffs that they may be responsible for taxable costs associated with Cotiviti's defense of the claim.[31]

## DISCUSSION

The FLSA authorizes a plaintiff to bring a "collective action" for overtime wages on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). Unlike in a class action under Federal Rule of Civil Procedure 23, parties are added to and bound by a FLSA collective action on an "opt-in" rather than "opt-out" basis. This requires the sending of an accurate and timely notice concerning the pendency of the action so that other "similarly situated" employees can make an informed decision about whether to join.

Courts within the Tenth Circuit have applied a two-step approach in determining if a collective action may be conditionally certified so that notice may issue. *See Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001); *Madsen v. Sidwell Air Freight*, No. 1:23-cv-0008, 2024 WL 1160204, at *1–2 (D. Utah Mar. 18, 2024); *Kirkpatrick v. Greenix Holdings, LLC*, No. 2:23-cv-0033, 2024

[29] *Id*. at 26–27.

[30] *Id*. at 28.

[31] *Id*. at 29.

WL 757158, at *3 (D. Utah Feb. 23, 2024); *Gifford v. Dr. Pizza, Inc.*, No. 22-cv-0707, 2023 WL 8376177, at *2 (D. Utah Dec. 4, 2023); *Flynn v. Colonial Management Group*, No. 1:23-cv-0128, 2023 WL 7165194, at *3–4 (D.N.M. Oct. 31, 2023); *Kovacs v. G4S Secure Sols. (USA) Inc.*, No. 20-CV-3180, 2022 WL 1402097, at *2 (D. Colo. Jan. 18, 2022); *see also James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892, 901 (D. Kan. 2021) (noting "the Tenth Circuit has approved a two-step approach for determining whether plaintiffs in a proposed opt-in collective action are 'similarly situated'"); *Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 431 (D.N.M. 2018) (noting that "this Court and many district courts in the Tenth Circuit apply the two-step" approach).

Under the first step in this approach courts apply a lenient standard to determine whether the plaintiff has asserted "substantial allegations that the putative class members were together victims of a single decision, policy, or plan," such that sending notice is appropriate. *See Thiessen*, 267 F.3d at 1102 (cleaned up); *Madsen*, 2024 WL 1160204 at *2 (*citing Kovacs*, 2022 WL 1402097, at *2 (cleaned up)). The lenient standard is applied because it recognizes that plaintiffs have been unable to conduct discovery. *See Madsen*, 2024 WL 1160204, at *2 (citing *Pack v. Investools, Inc.,* No. 2:09-cv-1042, 2011 WL 3651135, at *2 (D. Utah Aug. 18, 2011) (recognizing this rationale)). Then, after notice and discovery, the Court "utilizes a stricter standard" to determine whether the plaintiffs are similarly situated so that the action may continue as a collective action. *See Thiessen*, 267

F.3d at 1103. Cotiviti recognizes that *Thiessen* is binding precedent and that the Tenth Circuit noted that it is "arguably" the best approach to use.[32]

*1. Conditional Certification*

A. Whether Any Conditional Certification Or Notice Should Be Approved Before There Is More Discovery

Noting the discretion that courts have in whether to facilitate notice under the FLSA,[33] Cotiviti argues that the court should reject the two-step approach accepted by the Tenth Circuit in *Thiessen*, and commonly followed by the district courts within this Circuit. Instead, Cotiviti argues that the court should follow the more stringent approaches identified by the Fifth Circuit in *Swales v. KLLM Transp. Servs, L.L.C.,* 985 F.3d 430, 436–43 (5th Cir. 2021) and by the Sixth Circuit in *Clark v. A&L Homecare and Training Ctr.*, 68 F.4th 1003, 1011 (6th Cir. 2023).

In *Swales*, the court concluded that the two-step approach frustrates the notice process because: (1) the process of conditional certification is not consistently applied, and the standards vary from case to case leaving "no clue" as to what kinds of similarity matter; and (2) the conditional certification approach is nowhere mentioned in the text of the FLSA. *See id.* The Eighth Circuit in *Swales* suggests that district courts should require more proof of whether employees may be "similarly situated" before allowing notice to be sent and rejects the lenient standard of the two-step approach in favor of a more rigorous factual analysis that demands that some discovery be conducted before determining that the plaintiff and

[32] *See* ECF 28 at 14.

[33] *See* ECF 28 at 12–13.

other potential plaintiffs are "similarly situated" to permit notice. In adopting this approach, the *Swales* court seemed concerned that the two-step approach, with its lenient standard on notice, stirred up litigation. *See id.* at 441.[34]

And in *Clark* the Sixth Circuit rejected the *Swales* approach and instead adopted a slightly less stringent approach that requires plaintiffs to "show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves" before permitting FLSA notice. *See* 68 F.4th at 1009–11. And the *Clark* court (like the *Swales* court) was concerned that if the burden for notice is too low it will solicit meritless lawsuits. *Id.* at 1007, 1010 (noting that "the issuance of notice can easily expand the plaintiffs' ranks a hundredfold" and that notice to potentially ineligible employees "amounts to solicitation of those employees to bring suits of their own").

Plaintiff, however, correctly argues that the district courts in the Tenth Circuit, including two very recent decisions from this district, have rejected the heightened approaches suggested in *Swales* and *Clark*. *See, e.g., Madsen*, 2024 WL 1160204, at *2–3 (rejecting the *Swales* approach); *Kirkpatrick,* 2024 WL 757158, at *4 (rejecting the *Swales* and *Clark* approaches noting they are not the law in the Tenth Circuit); *see also Green v. Perry's Restaurants Ltd*, No. 21-cv-0023, 2022 WL 16744795, at *4 n.4 (D. Colo. Nov. 7, 2022) ("To the extent Defendants argue that

[34] *Swales* is also factually very different. In *Swales* the parties had already engaged in extensive discovery before seeking conditional certification and notice. At least according to the *Swales* court, that discovery suggested that the plaintiff and others might not be similarly situated under the economic-realities test as to who was their employer. Given that, the court noted that sending notice to parties who might be ineligible to participate "merely stirs up litigation." *Swales*, 985 F.3d at 441. No such discovery has been conducted in this action.

Court should follow the Fifth Circuit's approach in *Swales* . . . the Court declines to do so, as *Swales* is not binding Supreme Court or Tenth Circuit authority, nor does the Court find persuasive the reasoning of that decision."); *Spencer v. Mental Health Res., Inc.*, No. 1:21-cv-121, 2022 WL 3031839, at *3 (D.N.M. Aug. 1, 2022) (declining to adopt *Swales* and granting conditional certification); *Roberts v. Sidwell Air Freight Inc.*, No. C21-5912, 2022 WL 16949565, at *3–4 (W.D. Wash. Nov. 15, 2022) (concluding that the two-step approach, which is effectively a "plausibility-like standard" for conditional certification, is more appropriate as it allows the court to "monitor and approve" the notice sent out, while allowing the court to remain "neutral on the merits").

The court concludes, as did these many other courts, that the two-step method approved by the Tenth Circuit in *Thiessen* remains the appropriate method in determining whether to conditionally certify a FLSA collective action.[35] *See Kirkpatrick*, 2024 WL 757158, at *7.[36]

---

[35] In her Reply, Plaintiff argues that she has met the "strong likelihood" standard of *Clark*. [*See* ECF 30 at 7.] Because the court is not using that approach, it declines to rule on that issue.

[36] In a footnote in its Memorandum in Opposition [*see* ECF 28 at 18 n.2], Cotiviti requests that–if the court applies the *Thiessen* approved approach and issues an order granting Plaintiff's motion–the court should certify its order for interlocutory appeal to the Tenth Circuit. Cotiviti, however, has not presented any fulsome argument identifying how the prerequisites for such certification are satisfied here. The Court therefore denies Cotiviti's request.

B. Plaintiff Has Sufficiently Asserted That Certain Other RRAs Are Similarly Situated

There is no dispute in this action that Cotiviti's RRAs all perform the same job duties. Cotiviti effectively concedes as much.[37] As noted above, Plaintiff asserts that she and all other RRAs were subject to a practice in which they had to engage in up to 30 minutes of off-the-clock work before they could clock in to begin their jobs. Plaintiff asserts that she was instructed not to begin her shift until she was fully logged in and had booted up the necessary applications to perform her job.[38] Only then, according to Plaintiff, was she and the other RRAs permitted to clock in.[39] Plaintiff alleges that she should have been paid for this required additional pre-shift work and that, because she and the other RRAs were scheduled to work a five-day 40-hour week, she should have been paid at an overtime rate.[40] Opt-in plaintiff Ms. Abrams makes identical assertions.[41]

The allegations of the Complaint and the factual assertions made in the declarations of Plaintiff and Ms. Abrams plausibly support a preliminary finding that Plaintiff and some other RRAs are similarly situated sufficient to support notice. All RRAs have the same working conditions, the same job descriptions, and were expected to complete the same pre-shift login and booting up tasks as Plaintiff. And the Complaint and the declarations present substantial allegations that other

[37] *See* Answer at ¶3; Cauthorne Decl. at ¶16.

[38] *See* Compl. at ¶¶8–9; Pichler Decl. at ¶¶9–10, 13.

[39] *See id.*

[40] *See* Compl. at ¶¶10, 47.

[41] See Abrams Decl. at ¶¶9–10, 13.

RRAs who, like Plaintiff and Ms. Abrams, were trained at, worked at, worked through, or were supervised out of Cotiviti's McKinney, Texas call center, were victims of a uniform policy such that they meet the similarly situated standard for conditional certification, at least insofar as the pre-shift work is concerned.[42]

In reaching this conclusion the court is in no manner opining that other similarly situated RRAs will be identified or that the Plaintiff's claims in this case have any merit, or whether, following notice and discovery, Plaintiff will be able to avoid a decertification motion. *See Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1133 (D. Colo. 2011).

---

[42] To the extent that Cotiviti wishes to factually rebut Plaintiff's assertions, it may do so at the second stage of the approach accepted in *Thiessen* and applied here. At this initial conditional certification stage, the merits of Plaintiff's claims and, in turn, Cotiviti's asserted factual rebuttals are not to be considered. *See, e.g., Kirkpatrick*, 2024 WL 757158, at *4 (refusing to consider defendant's factual argument that its handbook provides that it would never ask or require employees to work off the clock, noting that the court will not settle any merits-based arguments "'in the guise of determining whether plaintiffs were similarly situated'") (quoting *Thiessen*, 267 F.3d at 1106–07); *McGlon v. Sprint Corp.*, No. 16-CV-2099, 2016 WL 7103949, at *2, 6 (D. Kan. Dec. 6, 2016) (declining to consider defendants' proffered declarations at the notice stage because "Plaintiff is only required to produce substantial allegations and supporting declarations" and noting that to the extent defendants wish to raise factual challenges "such challenges are appropriately raised at the stricter second-stage of the conditional certification process"); *see also Shabazz v. Asurion Insurance Service*, No. 3:07-0653, 2008 WL 1730318, at *3 (M.D. Tenn Apr. 10, 2008) (refusing to consider call center defendant's twenty factual declarations submitted in opposition to conditional certification noting that such arguments "are more appropriately raised at the second stage, or decertification stage"). In any event, even if it were to be considered, the Cauthorne Declaration might cut both ways. In her declaration Ms. Cauthorne admits that RRAs are "requested to clock in within 5 minutes, before or after, the start of their shift" and to do the same at the end of their shift. [Cauthorne Decl. at ¶13.] This assertion appears to support Plaintiff's claim that Cotiviti not only knew that some RRAs were doing work before they clocked in, but also that Cotiviti requested that they do so.

### C. Plaintiff Has Not Sufficiently Asserted That Certain Other RRAs Are Similarly Situated

The answer is different, however, for RRAs who did not have any connection to the McKinney, Texas call center. Plaintiff's only training was at the McKinney call center. However, she has not included any nonconclusory allegations in her complaint or factual assertions in her declaration to establish that RRAs outside the McKinney call center were trained, as Plaintiff claims she was, not to clock in before logging in and booting up. While Plaintiff has certainly alleged that the login, and boot-up, process was uniform and that RRAs were trained to follow a specific protocol in order to start their work,[43] she has not adequately alleged any firsthand knowledge that RRAs outside of the McKinney office were trained or told, as she claims she was,[44] to perform all these tasks before clocking in to start their 8-hour shifts, and were not paid for that time.[45] She only offers a conclusory allegation that Cotiviti's managers had "actual and constructive knowledge" that all RRAs were completing this pre-shift work without first clocking in and without pay, and another that Cotiviti "permitted, and in fact trained and required its RRAs to do this unpaid work."[46]

---

[43] *See* Compl. at ¶¶36, 41; Pichler Decl. at ¶¶5, 7.

[44] *See* Compl. at ¶¶8, 41.

[45] Plaintiff's only assertion on this point is that she "had multiple conversations with other [RRAs] about Cotiviti's compensation policies, including those discussed above, and its failure to pay [RRAs] for all work performed." [Pichler Decl. at ¶18; Abrams Decl. at ¶18.] Nowhere does Plaintiff identify what call centers these RRAs were affiliated with. Nor does she specify which RRAs she conversed with. Moreover, it is unclear that a conversation about "compensation policies" was necessarily a discussion about the specific uncompensated pre- and post-shift off-the-clock work alleged in this action.

[46] *See* Compl. at ¶11.

In contrast, Plaintiff and Ms. Abrams, both trained at and apparently working through the McKinney call center, have plausibly alleged that they "only get paid after [they] complete most, or all, of the boot-up and login process."[47] There is no similar factual assertion with respect to RRAs trained at or operating out of any other Cotiviti call center.[48]

Because Plaintiff's allegations and declarations lack any detail or firsthand knowledge to support a conclusion that RRAs who were not trained in or operating out of the McKinney call center were subject to the same limitation on not clocking in until after completing the full login and boot up process, the court lacks a sufficient factual basis for concluding that conditional certification would also be appropriate for those RRAs. *See, e.g.*, *Madsen*, 2024 WL 1160204, at *3 (denying conditional certification for other office employees where specific factual basis was lacking as to whether they were subject to the same uniform practices as plaintiff); *Bowling v. DaVita, Inc.*, No. 21-cv-03033, 2023 WL 4364140, at *7 (D. Colo. July 6, 2023) (concluding that plaintiff did not meet burden for nationwide conditional certification where there was no "factual allegations, beyond conclusory assertions, that would permit the Court to conclude that [plaintiff] has personal knowledge of the experiences of [defendant's] employees working in any other state"); *Braun v.*

---

[47] Pichler Decl. at ¶9; Abrams Decl. at ¶ 9.

[48] The fact that there is also no specific factual assertion from Plaintiff that it takes RRAs trained or operating out of other call centers 10 to 30 minutes to complete the login and boot-up process is less of a concern. As noted above, Cotiviti has acknowledged that all RRAs engage in a similar login process, so that the factual allegations as to how much time it takes Plaintiff to do so provide plausible support for how much time other RRAs would have had to spend logging in and booting up.

*Superior Indus. Int'l, Inc.*, No. 09-2560, 2010 WL 3879498, at *6 (D. Kan. Sept. 28, 2010) (limiting certification and notice to employees at just one of defendant's five facilities where "none of the named plaintiffs or the opt-in plaintiffs purport to have any knowledge of the pay practices in defendant's [other facilities]" and where there were "no allegations or evidence from which the court could infer that employees in those facilities are required to perform pre-and post-shift work [without compensation]"). *Cf. Deakin*, 328 F.R.D. at 434 (directing conditional certification of company-wide class where plaintiff submitted declarations from employees in five different states in which they attested to personal knowledge of uniform, nationwide practices); *Burch v. Qwest Communications Int'l, Inc.*, 500 F. Supp. 2d 1181, 1187 (D. Minn. 2007) (granting certification and notice for all call center employees after noting that 19 declarations were received from employees working at call centers in five different states all making "almost identical allegations").

In a similar call center FLSA case, a court for the Middle District of Tennessee came to a like conclusion. In *Shabazz v. Asurion Insurance Service*, No. 3:07-0653, 2008 WL 1730318, at *1 (M.D. Tenn Apr. 10, 2008), the plaintiffs alleged they were required to login in and boot up before they could clock in. The plaintiffs sought certification to send notice to all call center employees at the defendant's call centers in Tennessee and Houston. Although the court granted certification and permitted notice to employees at the Tennessee locations, it denied the motion for the Houston call center employees. *Id.* at *5–6. In doing so it noted that none of the declarations submitted in support of the motion came from anyone who worked at

the Houston facility. Further, the only suggestion of similar uncompensated work in Houston was based upon a statement in one of the declarations that the declarant talked with some "unidentified employees at the Houston call center who 'relayed' to him that they too were not compensated for performing off-the-clock tasks." *Id.* at *5 The court concluded that such a statement was not based upon personal knowledge and that it need not be considered in determining certification and notice. *Id.*; *see also Bishop v. AT&T Corp.*, 256 F.R.D. 503, 504–05 (W.D. Pa. 2009) (conditionally certifying collective class of employees at call centers identified in declarations but not including employees at four other call centers not so identified).

This determination, however, does not forever foreclose certification and notice for all other RRAs. Following notice and discovery as permitted by this court, the Plaintiff may be able to establish that RRAs outside of those affiliated with the McKinney call center were subjected to the same practices and were required to complete the login and boot up process before clocking in and not paid for such work. In such an event new expanded certification and notice can be sought.

*2. Notice of Conditional Certification*

Based on the discussion above, the court will conditionally certify the following class of putative opt-in plaintiffs for notice:

> All current and all former hourly employees who worked for Cotiviti, Inc. as non-exempt Records Retrieval Agents for the past three years preceding the date of the order granting conditional certification who were trained at, worked at, worked through, or were supervised out of Cotiviti's McKinney, Texas call center.

Plaintiff's Motion also seeks approval of a "proposed Notice and Consent Form" (the "Proposed Notice") to be sent to these putative opt-in plaintiffs. Cotiviti objects to the Proposed Notice for myriad reasons.[49] Although some courts have approved the form of notice at the same time conditional certification is granted, in this instance the court will direct the parties to first meet and confer and submit an agreed form of notice for court approval. And if the parties are unable to agree, the parties are ordered to submit a report explaining their good faith and legally supportable disagreements. *See Madsen,* 2024 1160204, at *16. Further, to assist the notice process, Cotiviti is directed to provide Plaintiff's counsel with a list of the names, home addresses, personal email addresses, and mobile phone numbers for all persons who fall within the certified class of putative opt-in plaintiffs. *See, e.g., German*, 2021 WL 1087718, at *4–5 (noting that disclosure of this information will ensure that proper notice is given).

CONCLUSION

Accordingly, based on the foregoing,

[49] *See* ECF 28 at 26–30. As evident from the court's identification of the certified class of putative opt-in plaintiffs, the court has rejected Cotiviti's specific objection that the time period for notice should be limited to those RRAs who were employed within the last two years. A three-year period is permissible where, as here, the Plaintiff has alleged Cotiviti's FLSA violations were willful. [Compl. at ¶¶15, 88]; *see, e.g., German v. Holtzman Enterprises, Inc.*, No. 19-cv-3540, 2021 WL 1087718, at *3 (D. Colo. Mar. 22, 2021) (rejecting request to limit proposed collective class to a two-year period noting that "statute of limitations arguments are better suited for later stages of the litigation"); *Gifford*, 2023 WL 8376177, at *2 (granting notice for a three-year period noting that it is "[d]uring the second stage analysis of certification that a court may review 'the various defenses available to defendant'") (*citing Thiessen*, 267 F. 3d at 1102–03); *Kie v. Ivox Solutions, LLC*, No. 2:15-cv-14296, 2016 WL 397606, at *2 n.1 (S.D. Fla. Feb. 2, 2016) (noting that arguments over the temporal scope of a proposed collective class go to the merits and are "premature" at the initial certification stage).

IT IS ORDERED that Plaintiff's Motion [ECF 25] is GRANTED IN PART. The Court grants conditional certification for all potential opt-in plaintiffs employed by Cotiviti who worked for Cotiviti, Inc. as non-exempt Records Retrieval Agents for the past three years preceding the date of the order granting conditional certification who were trained at, worked at, worked through, or were supervised out of Cotiviti's McKinney, Texas call center; and

IT IS FURTHER ORDERED that the parties are directed to meet and confer in good faith regarding the form, content, and substance of notice that will be sent, to whom it will be sent, and the methods by which it will be sent. The parties must do so within 14 days of this Decision and Order. If the parties agree, a stipulated form of notice is to be filed with the Court within 21 days of this Decision and Order. In the event the parties cannot agree upon a stipulated form of notice, each party must file a report with the Court within 21 days of this Decision and Order identifying any areas of disagreement, a proposed resolution, and citing any applicable precedent. Such reports are limited to 5 pages; and

IT IS FURTHER ORDERED that Cotiviti is directed to provide Plaintiff's counsel with a list of the names, home addresses, personal email addresses, and

mobile phone numbers for all persons who fall within the certified class of putative opt-in plaintiffs within 14 days of this Decision and Order.

DATED this 21st day of June 2024.

BY THE COURT:

Hon. Ann Marie McIff Allen
United States District Judge