Kevin J. Stoops (*Pro Hac Vice*)
Paulina R. Kennedy (*Pro Hac Vice*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
pkennedy@sommerspc.com

April L. Hollingsworth (Bar No. 9391)
HOLLINGSWORTH LAW OFFICE, LLC
1881 South 1100 East
Salt Lake City, Utah 84105
Telephone: (801) 415-9909
april@aprilhollingsworthlaw.com

*Attorneys for Plaintiff and the*
*Putative Collective Members*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | | |
|---|---|---|
| **YVETTE PICHLER**, individually, and on behalf of others similarly situated, | : | **PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, APPOINTMENT OF COLLECTIVE REPRESENTATIVE AND COLLECTIVE COUNSEL, AND SETTING FINAL APPROVAL HEARING** |
| Plaintiff, | : | |
| v. | : | **Case No.: 2:23-cv-00884-AMA-DAO** |
| **COTIVITI, INC**, a Delaware corporation, | : | **Hon. Ann Marie McIff Allen** |
| Defendant. | : | **Mag. Daphne A. Oberg** |

In this motion, Plaintiff respectfully requests entry of an order: (1) preliminarily certifying the collective claims for settlement purposes only under 29 U.S.C, §§ 201, *et seq.*; (2) preliminarily approving the Parties' Amended and Restated Settlement Agreement and Release (hereinafter

"Amended Settlement Agreement"); (3) preliminarily appointing Plaintiff as the representative of, and Sommers Schwartz, P.C. and Hollingsworth Law, LLC as counsel ("Collective Counsel") for, the Settlement Collective Members; (4) approving the Parties' proposed form for providing Notice of the Collective Action Settlement and Opt-In/Objection Periods to the Putative Collective Members and authorizing distribution to Putative Collective Members; and (5) scheduling a hearing on the final approval of the Settlement and approval of the application of Collective Counsel and Plaintiff for the requested attorneys' fees, litigation expenses, and service awards.

Plaintiff respectfully submits good cause exists for granting the Motion for the reasons set forth in the concurrently filed documents. Defendant's counsel has reviewed the documents being filed in support of this Motion and does not oppose the Motion, though Defendant has reserved the right to submit a Notice of Non-Opposition, together with any additional points and authorities for the Court's consideration.

The basis for this Motion is that the proposed Settlement Agreement is fair, adequate, and reasonable and in the best interests of the Collective members as a whole, and the procedures proposed by the Parties are adequate to ensure the opportunity of Collective members to participate in, decline to opt-in to, or object to the Settlement.

This Motion is based upon the Memorandum of Points and Authorities and other documents filed herewith, including the Settlement Agreement, the Declaration of Class Counsel (with exhibits), the [Proposed] Order granting preliminary approval as addressed above, and the other pleadings and records on file in this action, and the presentations of counsel and such oral or documentary evidence as may be presented at the hearing on this unopposed Motion.

Dated: February 7, 2025                    Respectfully Submitted,

                                           /s/ Kevin J. Stoops
                                           Kevin J. Stoops
                                           Paulina R. Kennedy
                                           SOMMERS SCHWARTZ, P.C.
                                           One Towne Square, 17th Floor
                                           Southfield, Michigan 48076

Tel: 248-355-0300
kstoops@sommerspc.com
pkennedy@sommerspc.com

April L. Hollingsworth
HOLLINGSWORTH LAW OFFICE, LLC
1881 South 1100 East
Salt Lake City, Utah 84105
Tel: (801) 541-6600
april@aprilhollingsworthlaw.com

*Attorneys for Plaintiff and the*
*Putative Collective/Class Members*

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2025, I electronically filed the foregoing with the

Clerk of the Court using the ECF system, thereby serving all counsel of record.

/s *Kevin J. Stoops*
Kevin J. Stoops

Kevin J. Stoops (*Pro Hac Vice*)
Paulina R. Kennedy (*Pro Hac Vice*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
pkennedy@sommerspc.com

April L. Hollingsworth (Bar No. 9391)
HOLLINGSWORTH LAW OFFICE, LLC
1881 South 1100 East
Salt Lake City, Utah 84105
Telephone: (801) 415-9909
april@aprilhollingsworthlaw.com

*Attorneys for Plaintiff and the*
*Putative Collective Members*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **YVETTE PICHLER**, individually, and on behalf of others similarly situated, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, APPOINTMENT OF COLLECTIVE REPRESENTATIVE AND COLLECTIVE COUNSEL, AND SETTING FINAL APPROVAL HEARING** |
| Plaintiff, | |
| v. | |
| **COTIVITI, INC**, a Delaware corporation, | |
| Defendant. | **Case No.: 2:23-cv-00884-AMA-DAO** |
| | **Hon. Ann Marie McIff Allen** |
| | **Mag. Daphne A. Oberg** |

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ...........................................................................................................1

II. PROCEDURAL HISTORY OF THE CASE...............................................................2

    A.      Case Background ..................................................................................2

    B.      Summary of Discovery Conducted Prior to Settlement..........................................4

    C.      Estimated Exposure ..................................................................................6

    D.      The Settlement Agreement ..........................................................................7

          1.  The Putative Collective Members.........................................................7

          2.  The Monetary Payments ...........................................................7

          3.  The Release ......................................................................8

          4.  Notice, Opt-in, and Objection Periods .................................................9

III. LEGAL ANALYSIS ......................................................................................10

    A.      Legal Framework for Collective Action Settlements ............................................10

          1.     FLSA Collective Action Certification ......................................................10

          2.     FLSA Collective Action Settlement ........................................................11

    B.      The Court Should Approve the Parties' Proposed Settlement................................12

          1.     FLSA Collective Action Certification ......................................................12

          2.     The Amended Settlement Agreement Represents Resolution of a Bona Fide Dispute and is Fair and Reasonable………………………………...13

                (i) The Litigation represents a bona fide dispute between the Parties…...13
                (ii) The Settlement is fair and reasonable based on the attendant risks of continued litigation ..........................................................14

    C.      The Requested Attorneys' Fees, Costs, Incentive Payments and Administration Costs Are Fair and Reasonable and Should be Awarded ......................................15

          1.     The Requested Attorneys' Fees are Fair and Reasonable and Should be Awarded ......................................................................15

2.  The Litigation Expenses Incurred in Prosecuting this Action are
    Reasonable and Should be Awarded ……………………………………19

3.  The Service Awards are Fair and Reasonable and Should be
    Awarded ...................................................................................................20

4.  The Settlement Administration Fees are Reasonable and Should be
    Awarded ...................................................................................................21

IV. CONCLUSION.................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

*American Employers' Ins. Co. V. King Resources Co.*,
   1975 U.S. Dist. LEXIS 12910 (D. Colo. Apr. 10, 1975)...................................... 15
*Bozak v. FedEx Ground Package Sys., Inc.*,
   2014 U.S. Dist. LEXIS 106042 (D. Conn. July 31, 2014) ................................ 14
*Collins v. Sanderson Farms, Inc.*,
   568 F. Supp. 2d 714 (E.D. La. 2008)............................................................... 10
*Farley v. Family Dollar Stores, Inc.*,
   2014 WL 5488897 (D. Colo. Oct. 30, 2014) .................................................... 18
*Forauer v. Vt. Country Store, Inc.*,
   2015 U.S. Dist. LEXIS 5604 (D. Vt. Jan. 16, 2015) ....................................... 14
*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) .................................................................... 20
*Gambrell v. Weber Carpet, Inc.*,
   2012 WL 5306273 (D. Kan. Oct. 29, 2012) ..................................................... 12
*Geiger v. Sisters of Charity v. Leavenworth Health Sys., Inc.*,
   2015 U.S. Dist. LEXIS 97362 (D. Kan. July 27, 2015) ................................... 11
*Gottlieb v. Barry*,
   43 F.3d 474 (10th Cir. 1994) ........................................................................... 15
*Horton v. Leading Edge Mktg. Inc.*,
   2008 WL 323222 (D. Colo. Feb. 4, 2008)........................................................ 18
*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
   625 F. Supp. 2d (D. Colo. 2009) ...................................................................... 17
*In re Safety Components, Inc. Sec. Litig.*,
   166 F Supp. 2d 72 (D.N.J.2001)....................................................................... 18
*In re Shell Oil Refinery*,
   155 F.R.D. 552 (E.D. La. 1993) ....................................................................... 19
*In re* Wells Fargo Wage and Hour Emp't Practices Litig.,
   18 F. Supp. 3d 844 (S.D. Tex. May 12, 2014) ................................................. 10
*Johnson v. Georgia Housing Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ........................................................................... 16
*Keel v. O'Reilly Auto Enterprises, LLC*,
   2018 WL 10509413 (D. Utah May 5, 2018) ............................................... 10, 12
*Lucas v. Kmart Corp.*,
   234 F.R.D. 688 (D. Colo. 2006) ...................................................................... 14
*Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.*,
   2010 WL 5387559 (D. Colo. Dec. 22, 2010) ............................................. 16, 18
*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) .................................................................. 11, 12
*Marcus v. Kansas Dept. of Revenue*,
   208 F.Supp.2d 1179 (D. Kan. 2002)................................................................. 15
*Moore v. Ackerman Inv. Co.*,
   2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ................................................. 11
*Murillo v. Pac. Gas & Elec. Co.*,
   2010 WL 2889728 (E.D. Calif. July 21, 2010) ................................................ 10
*Rabin v. Concord Assets Group, Inc.*,

1991 WL 275757 (S.D.N.Y. 1991) ........................................................................ 17

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185 (S.D.N.Y. 1997) ................................................................. 20

*Robles v. Brake Masters Sys., Inc.*,
   2011 WL 9717448 (D.N.M. Jan. 31, 2011)..................................................... 20

*Shushan v. University of Colorado at Boulder*,
   132 F.R.D. 263 (D.Colo.1990) ........................................................................ 10

*Thiessen v. GE Capital Corp.*,
   267 F.3d 1095 (10th Cir.2001) ................................................................. 10, 11

*Tuten v. United Airlines, Inc.*,
   41 F. Supp. 3d 1003 (D. Colo. 2014) .............................................................. 15

*Uselton v. Commercial Lovelace Motor Freight, Inc.*,
   9 F.3d 849 (10th Cir. 1993) ...................................................................... 15, 16

*Wade v. Kroger Co.*,
   2008 WL 4999171 (W.D. Ky. Nov. 20, 2008)................................................ 20

*Whittington v. Taco Bell of Am., Inc.*,
   2013 WL 6022972 (D. Colo. Nov. 13, 2013)................................................... 16

Statutes

29 U.S.C. § 216(b) ...........................................................................................Passim
29 U.S.C, §§ 201 ..................................................................................... 1, 2, 22

Rules

Rule 23 of the Federal Rules of Civil Procedure ....................................... 11

# I.    __INTRODUCTION__

This is a FLSA collective action settlement. Plaintiff Yvette Pichler (hereinafter "Plaintiff") settled this litigation on behalf of approximately 54 hourly Records Retrieval Agents working for Defendant Cotiviti, Inc. (hereinafter "Defendant"), and who were trained at, worked at, worked through, or were supervised out of Defendant's McKinney, Texas call center (the "Putative Collective Members").

Without waiving any arguments regarding the merits of these claims, or the suitability of the case for class treatment, Defendant has agreed to pay $99,999.99 (the Total Settlement Amount) to resolve the claims asserted in Plaintiff's Complaint. Plaintiff, without opposition from Defendant, now seeks court approval of the Parties' collective action settlement (the "Settlement") as set forth in the Parties Amended and Restated Settlement Agreement and Release (the " Amended Settlement Agreement"). Filed concurrently in support of this Motion are the Parties' Amended Settlement Agreement, attached as Exhibit A and the declaration of proposed Class Counsel, Kevin Stoops, attached as Exhibit B.  A proposed order is attached as Exhibit C.

This is a common fund settlement. All Putative Collective Members who timely submit valid consent to join forms (the "Settlement Collective Members") will automatically receive settlement checks.

For settlement purposes only, the Plaintiff respectfully requests that the Court enter an Order (1) preliminarily certifying the collective claims for settlement purposes only under 29 U.S.C, §§ 201, *et seq*.; (2) preliminarily approving the Parties' Settlement; (3) preliminarily appointing Plaintiff as the representative of, and Sommers Schwartz, P.C. and Hollingsworth Law, LLC as counsel ("Collective Counsel") for, the Settlement Collective Members; (4) approving the Parties' proposed form for providing Notice of the Settlement to the Putative Collective Members; and (5)

scheduling a hearing on the final approval of the Settlement and approval of the application of Collective Counsel and Plaintiff for the requested attorneys' fees, litigation expenses, and service awards.

## II.    <u>PROCEDURAL HISTORY OF THE CASE</u>

### A.    CASE BACKGROUND

Plaintiff filed this action on December 6, 2023 in the United States District Court for the District of Utah, asserting the following claims:

| Count I: | Violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* – Failure to Pay Overtime |
|---|---|
| Count II: | Violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* – Failure to Maintain Records |
| Count III: | Breach of Contract |
| Count IV: | Unjust Enrichment/Quantum Meruit |

[ECF No. 1].

On February 28, 2024, Defendant filed its Answer, which denied all of Plaintiff's allegations of unpaid work. Further, Defendant asserted 17 affirmative defenses, including, among others: 1) that Plaintiff and the putative collective members were paid for all worked performed; 2) that  Plaintiff and the putative collective members are not entitled to liquidated damages or an extended (third year) statute of limitations because Defendant's actions were not willful and it acted in good faith; and 3) that the alleged off-the-clock work was not compensable under the *de minimis* doctrine. [ECF No. 21].

On March 12, 2024 Plaintiff filed her Pre-Discovery Motion for Conditional Certification and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b). [ECF No. 25]. Plaintiff supported her motion with multiple exhibits including declarations from herself and opt-in Yessenia Abrams.

On April 11, 2024 Defendant filed its response in opposition to Plaintiff's Pre-Discovery

Motion for Conditional Certification and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b). [ECF No. 28]. Defendant supported its response with a declaration from its Senior Human Resource Generalist.

On May 1, 2024 Plaintiff filed a Reply Brief in support of her Pre-Discovery Motion for Conditional Certification and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b). [ECF No. 30].

On June 21, 2024 the Court issued a 20 page Memorandum Decision and Order on Plaintiff's Pre-Discovery Motion for Conditional Certification and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b). [ECF No. 33]. By way of that Order, the Court granted Plaintiff's request for Court-Authorized Notice but limited dissemination of the notice to collective members who were trained at, worked at, worked through, or were supervised out of Defendant's McKinney, Texas call center. [*Id.*].

Over the next few weeks, the Parties conducted numerous meet and confer conferences concerning the number of collective members in the putative collective and the possibility of exploring resolution prior to issuance of conditional notice. (Exh. B, Stoops Decl. at ¶ 18). During those meet and confer conferences Defendant identified the 54 putative collective members (including the Named Plaintiff and Opt-in Plaintiff Abrams). (*Id.* ¶ 19). Additionally, Defendant provided Plaintiff's Counsel with time and pay records for all of the putative collective members throughout the collective period. (*Id.* ¶ 20).

Over the next several weeks, the Parties engaged in direct negotiations of the putative collective claims. (*Id.* ¶ 21). Ultimately the Parties were able to reach a collective wide settlement. (*Id.* ¶ 22). At all times, the Parties' settlement negotiations have been non-collusive, adversarial, at arm's length. (*Id.* ¶ 23).

On September 25, 2024 the Parties filed a Notice of Settlement. [ECF No. 37]. On October 1, 2024 the Parties filed a Stipulated Order Approving FLSA Settlement. [ECF No. 38].

On November 1, 2024 the Court entered its Memorandum Decision & Order Denying Joint Motion for Approval of Collective Action Settlement. [ECF No. 40]. By way of that Order, the Court directed the Parties to modify their Settlement Agreement to change the approval process such that the collective members would be given notice of the settlement, an option to join the collective, and an opportunity to raise objections to the settlement. [*Id.*].

Over the next few months the Parties negotiated the terms of the Amended Settlement Agreement, consistent with the mandates of the Court's November 1, 2024 Order, that is now before the Court for Preliminary Approval. (Exh. B, Stoops Decl. at ¶ 28).

### B.    SUMMARY OF DISCOVERY CONDUCTED PRIOR TO SETTLEMENT

Plaintiff's Counsel based the Complaint upon substantial pre-filing research, both factual and legal. Additionally, Defendant produced substantial electronic data responsive to allow Plaintiff's Counsel to conduct a comprehensive damage analysis for the collective. The Parties' counsel conducted numerous phone conferences and exchanged extensive correspondence on Plaintiff's claims, Defendant's defenses, and the scope of discovery. The documents and data provided and reviewed by Collective Counsel included the following:

a.  Information pertaining to the number of Collective Members employed by Defendant during the statute of limitations period applicable to the case, along with metrics related to: rate of pay; dates of employment; hours worked per week; total weeks worked; total shifts worked; average hours worked per week; and percentage of weeks worked that equaled or exceeded 40 hours.

b.  Data modeling and related statistics identifying off-the-clock work by the Collective Members; and

c.  Documents provided to counsel by the Plaintiff.

(Exh. B, Stoops Decl. at ¶ 31).

Throughout the litigation, Defendant asserted numerous legal and factual defenses to Plaintiff's claims and collective certification efforts, including, among others, that:

   a.  The time Plaintiff and the Class Members sought compensation for was not compensable under the Portal-to-Portal Act.

   b.  The time Plaintiff and the Class Members sought compensation for was not compensable because it was *de minimis*.

   c.  Defendant maintains written employment policies, which prohibit all off-the-clock work.

   d.  Defendant instructs and requires employees to report any suspected violation of Defendant's policies prohibiting off-the-clock work.

   e.  Defendant will tender Collective Members to testify that they did not work off-the-clock and/or that the alleged off-the-clock work is exaggerated.

   f.  The putative Collective Members engaged in personal activities at the beginning of their shifts.

   g.  Plaintiff's allegations regarding the amount of off-the-clock time worked grossly overstates how long it takes to perform the tasks he describes.

   h.  The putative Collective Members will not be able to prove their off-the-clock time because no records exist identifying the exact amount of time they spent each shift performing the off-the-clock duties.

   i.  Plaintiff and the Collective Members were paid for all worked performed.

   j.  Any alleged off-the-clock work must be offset by Defendant's payments to Plaintiff and the Collective Members for non-compensable work time.

   k.  Plaintiff will not be able to establish that Defendants' alleged violations were willful.

   l.  Plaintiff and the putative Collective Members will not be able to recover liquidated damages.

(*Id.* at ¶ 37).

The existence of Defendant's factual and legal arguments weighed on the parties' decision to resolve the case. While Collective Counsel understandably takes issue with the viability of some of these defenses, the risks associated with the continued litigation of Plaintiff's wage claims simply cannot be disregarded in measuring the reasonableness of the settlement.

Specifically, settling this case now saves the parties from years of litigation and tremendous uncertainty as to the ultimate outcome of the litigation. Should the parties have continued to litigate the case, they would have been faced with no less than 6 to 12 months of additional formal discovery (individual class member depositions; interrogatories and requests for production of documents; electronic data production; 30(b)(6) depositions). Discovery, once completed, would likely be followed by Rule 23 certification motion practice on Plaintiff's various state law claims, numerous dispositive motions, and eventually one or more trials. It is very likely that this litigation would extend for another one to two years and cost the parties $100,000 to $250,000 (or more) each in attorneys' fees and expenses. (*Id.* at ¶ 38).

### C.    ESTIMATED EXPOSURE

To evaluate and negotiate settlement, Collective Counsel retained expert economist Eric Lietzow of Desmond, Marcello & Amster, LLP. Mr. Lietzow, with my assistance, prepared a time consuming and complicated damage analysis of all claims at issue in this case. (Exh. B, Stoops Decl. at ¶ 39).

In her complaint, Plaintiff estimated a maximum of fifteen (15) to thirty-five (35) minutes of off-the-clock work per day associated with pre- and post-shift off-the-clock work. However, Defendant insisted that these estimations are grossly inflated and that at most the putative class members only performed off-the-clock tasks equaling between two (2) and four (4) minutes per shift. Further, Defendant continued to assert that the alleged time is not compensable under the Portal-to-Portal Act and the *de minimis* doctrine. (*Id.* at ¶ 40).

Affording due consideration to the facts of the case and Defendant's evidence, Class Counsel determined that reasonable estimation of the actual maximum off-the-clock work damages equals six (6) to eight (8) minutes per shift. (*Id.* at ¶ 41).

Utilizing the six (6) to eight (8) minute per day estimation, Class Counsel and the expert

economist developed a time consuming and complicated damage analysis of all claims and calculated the Defendant's maximum exposure for all claims (including overtime wages, straight time wages, treble damages on all unpaid wages, and interest) fell in the range of $64,990 to 87,538. (*Id.* at ¶ 42).

Based on the damage analysis conducted by Class Counsel and their damages expert, and in light of the factual and legal defenses identified above, the $99,999.99 settlement equates to 114.2% to 153.8% of Defendant's $64,990 to 87,538 damage exposure. (*Id.* at ¶ 43).

### D.    THE SETTLEMENT AGREEMENT

The Amended Settlement Agreement's material terms are briefly summarized below, but the full Amended Settlement Agreement is attached hereto as Exhibit A.

#### 1.    **The Putative Collective Members.**

For purposes of settlement only, the parties have agreed to certification of the following collective pursuant 29 U.S.C. § 216(b):

> "Putative Collective Members" means the 54 current or former hourly employees of Cotiviti who worked as non-exempt Records Retrieval Agents, during the Collective Period,[1] who were trained at, worked at, worked through, or were supervised out of Cotiviti's McKinney, Texas call center, who are listed on Exhibit E to this Agreement (and who were identified in the timekeeping and payroll data produced by Cotiviti for purpose of facilitating the Parties' settlement discussions).[2]

(Exh. A at § 1(n)).

#### 2.    **The Monetary Payments.**

Defendant has agreed to fund a "Total Settlement Amount" of $99,999.99 (and will separately pay Defendant's employer share of payroll taxes arising out of the Settlement

---

[1] "Collective Period" means the period beginning on June 19, 2021, and extending through June 22, 2024. (Exh. A at § 1(d)).

[2] Exhibit E of the Amended Agreement, a list of the names of the 54 Putative Collective Members, is omitted due to concerns for employees' privacy.

Payments). (Exh. A at § 1(x)). The following amounts will be deducted from the Gross Settlement Fund: $33,333.33 for Collective Counsel's attorneys' fees (33.33% of the Total Settlement Amount); up to $2,000 for litigation expenses; up to $6,900 for settlement administration fees; and $2,000 for collective representative service awards. (*Id.* at §§ 7(b-c), 13(a)). The balance of the settlement fund, the "Net Settlement Fund," will be distributed to the Settlement Collective Members[3] as follows:

> The Settlement Administrator will calculate the Settlement Payment that each Settlement Collective Member will receive as follows: the Settlement Administrator will divide the Net Settlement Fund by the total number of workweeks that all Putative Collective Members, collectively, were employed during the Collective Period ("Workweek Amount"). The Settlement Administrator will then multiply the Workweek Amount by the total number of worked weeks that each Settlement Collective Member was employed during the Collective Period to arrive at each Settlement Collective Member's Settlement Payment.

(*Id.* at § 7(d)).

Individual Settlement Amounts will be allocated as follows: 50% as wages subject to withholding under an IRS Form W-2; and 50% payable as liquidated damages under an IRS Form 1099, with nothing withheld from such payments. (*Id.* at § 7(g)).

Settlement Collective Members will have 120 days to cash their check. (*Id.* at § 14(c)). Any uncashed check proceeds will revert to Defendant. (*Id.* at § 7(f)).

### 3.  **The Release.**

The Settlement Collective Members will be bound by a specific release:

Each Settlement Collective Member fully releases and discharges Cotiviti and

---

[3] "Settlement Collective Members" means the Named Plaintiff, Service Payment Recipient (Opt-in Plaintiff Yessenia Abrams), and Putative Collective Members who submit consents to join the action. (Exh. A at § 1(u)).

Releasees[4] from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, costs and expenses, damages, actions and causes of action of whatever kind or nature, whether known or unknown, arising out of or related in any way to alleged unpaid regular, minimum, or overtime wages, off-the-clock work, payment for all hours worked, miscalculation of wages, untimeliness of pay, or retaliation for complaining about wages or asserting wage-related claims, including claims under the FLSA or any other federal, state, or local statute; breach of contract, unjust enrichment, and any other federal, state or local common law or equitable claims; and wage claims; and includes, without limitation, any damages, liquidated damages, penalties, interest, fees or costs derivative from claims released in this paragraph, that were or could have been alleged in this Action, or that reasonably arise out of the acts alleged in the Action …. (Exh. A at ¶ 16(a)).

Named Plaintiff Pichler and Opt-in Plaintiff Abrams will be bound by a general release in consideration for their service awards. (Exh. A at ¶ 17(b)).

### 4. <u>Notice, Opt-in, and Objection Periods.</u>

The Settlement Administrator will provide a Notice of the Collective Action Settlement and Opt-In/Objection Periods (the "Settlement Notice") to the Putative Collective Members by U.S. Mail. (Exh. A at ¶ 14(a)). The Settlement Notice, attached at Exhibit B to the Settlement Agreement, has been drafted to efficiently yet comprehensively describe the terms of the Settlement. The Settlement Administrator shall issue the Settlement Notice no later than 28 days after the Court's Preliminary Approval Order. (*Id.*).

Putative Collective Members will have 60 days following the mailing of the Settlement Notice to submit opt-in consent forms. (Exh. A at ¶ 1(j)). Putative Collective Members who want

---

[4] Releasees are defined as: "Cotiviti and any of its parent organizations, holding companies, predecessors, successors, affiliates, subsidiaries, divisions, business units, joint venturers, joint employers, and related entities and their past, present and/or future, direct and/or indirect officers, directors, members, managers, employees, contractors, agents, representatives, attorneys, insurers, partners, investors, shareholders, and administrators, and any other persons or entities who could be included within the definition of 'employer' under the FLSA, and/or any other federal, state, or local law or ordinance pertaining to the payment of wages in any location that a Settlement Collective Member worked or resided, including but not limited to all officers, directors, managers, agents, and employees of Cotiviti and the aforementioned entities in their personal capacities." (Exh. A at ¶ 1(p)).

to object to the Settlement must do so later than 67 days after the original mailing of the Class Notice. (Exh. A at ¶ 1(i)).

## III.    LEGAL ANALYSIS

### A.    Legal Framework for Collective Action Settlements

#### 1.    FLSA Collective Action Certification

In order to participate in a collective action settlement brought under 29 U.S.C. § 216(b), a potential plaintiff must affirmatively "consent in writing" in order to become a party to the action. If a potential plaintiff does nothing, he will not be bound by the outcome, favorable or unfavorable. *Collins v. Sanderson Farms, Inc*., 568 F. Supp. 2d 714, 721 (E.D. La. 2008); *Shushan v. University of Colorado at Boulder* 132 F.R.D. 263, 264 (D.Colo.1990). This "opt in" feature creates a "fundamental irreconcilable difference" between a FLSA collective action and a class action brought pursuant to Rule 23. *Id.*

Some courts have required "final" certification before approving an FLSA collective action settlement. *See Murillo v. Pac. Gas & Elec. Co.*, 2010 WL 2889728, at *2 (E.D. Calif. July 21, 2010). Other courts have rejected final certification as a requirement for settlement approval. *See e.g.*, *In re* Wells Fargo Wage and Hour Emp't Practices Litig., 18 F. Supp. 3d 844, 853 (S.D. Tex. May 12, 2014) (explaining courts in the Fifth Circuit have never imposed a final certification requirement for settlement and it is not appropriate as it applies to decertification motions filed by Defendants at the close of discovery and not settlement.) The Tenth Circuit has not addressed the issue. However, several courts within this district have required such approval. *See, e.g., Keel v. O'Reilly Auto Enterprises, LLC*, No. 2:17-cv-667, 2018 WL 10509413, at *2 (D. Utah May 5, 2018).

The Tenth Circuit has approved a two-step approach to determining whether plaintiffs are "similarly situated" for purposes of FLSA Section 216(b). *Thiessen v. GE Capital Corp.*, 267

F.3d 1095, 1105 (10th Cir.2001). Under this approach, a court typically makes a conditional determination whether a collective action should be certified for purposes of sending notice of the action to potential class members, *Thiessen,* 267 F .3d at 1102, and then at the close of discovery (often prompted by a motion to decertify), the court makes a second collective action determination using a stricter standard of "similarly situated." *Thiessen,* 267 F.3d at 1102–03. During this second stage analysis, the court considers several factors including (1) the employment settings of individual plaintiffs; (2) various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *See id.* at 1103.

### 2.     FLSA Collective Action Settlement

FLSA collective action settlements require the approval of the Department of Labor or a federal district court. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). Public policy favors the settlement of class action lawsuits. *Geiger v. Sisters of Charity v. Leavenworth Health Sys., Inc.*, 2015 U.S. Dist. LEXIS 97362 at *5 (D. Kan. July 27, 2015). Section 216(b) does not require a "fairness" hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b). *Moore v. Ackerman Inv. Co*., 2009 WL 2848858, at *2 (N.D. Iowa Sept. 1, 2009). *See also*, The Fair Labor Standards Act, Third Edition, Volume II, Ch. 17 X.D, p. 17-201 (citing cases) ("In cases that only present FLSA claims, a fairness hearing is not required. A collective action settlement may be brought to the court on a single motion to approve the settlement and enter a stipulated judgment.")

"[A] district court may enter a stipulated judgment [under the FLSA] after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th

Cir.1982); *see also id.* at 1355 ("there is only one context in which compromises of FLSA back wages or liquidated damages may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bonafide dispute over the FLSA provisions"). If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation. *See Lynn's Food Stores,* 679 F.2d at 1354; *Gambrell v. Weber Carpet, Inc.*, 2012 WL 5306273, at *2 (D. Kan. Oct. 29, 2012).

This Court has advised: "In determining whether to approve a proposed settlement in an FLSA action, courts consider, among other things, whether the proposal is 'fair and reasonable to all parties concerned' and 'contain[s] a reasonable award of attorneys' fees.'" Memorandum Decision & Order Denying Joint Motion for Approval of Collective Action Settlement, ECF No. 40 at 3 (quoting *Keel*, 2018 WL 10509413, at *2).

## B.    The Court Should Approve the Parties' Proposed Settlement

### 1.    FLSA Conditional Collective Action Certification

In the Court's Conditional Certification Order, the Court concluded that Plaintiff had provided sufficient evidence to make a preliminary finding of similarly situated Records Retrieval Agents who were trained at, worked at, worked through, or were supervised out of Defendant's McKinney, Texas call center. [ECF No. 33]. This finding was sufficient for the court to conclude that the putative class members, as limited by the Court, were similarly situated, and thus notice should be issued to said Record Retrieval Agents. Likewise, the settlement collective should be conditionally certified for purposes of providing notice of the settlement and to distribute

settlement payments pursuant to the Parties' Amended Settlement Agreement.

**2.  The Amended Settlement Agreement Represents Resolution of a Bona Fide Dispute and is Fair and Reasonable**

**(i)    The Litigation represents a bona fide dispute between the Parties.**

Plaintiff's Complaint alleges uncompensated off-the-clock work time in connection with logging into and out of Defendant's computer programs and applications. Defendant asserted numerous legal and factual defenses to Plaintiff's claims and collective certification efforts, including, among others, that:

a.  The time Plaintiff and the Class Members sought compensation for was not compensable under the Portal-to-Portal Act.

b.  The time Plaintiff and the Class Members sought compensation for was not compensable because it was *de minimis*.

c.  Defendant maintains written employment policies, which prohibit all off-the-clock work.

d.  Defendant instructs and requires employees to report any suspected violation of Defendant's policies prohibiting off-the-clock work.

e.  Defendant will tender Collective Members to testify that they did not work off-the-clock and/or that the alleged off-the-clock work is exaggerated.

f.  The putative Collective Members engaged in personal activities at the beginning of their shifts.

g.  Plaintiff's allegations regarding the amount of off-the-clock time worked grossly overstates how long it takes to perform the tasks he describes.

h.  The putative Collective Members will not be able to prove their off-the-clock time because no records exist identifying the exact amount of time they spent each shift performing the off-the-clock duties.

i.  Plaintiff and the Collective Members were paid for all worked performed.

j.  Any alleged off-the-clock work must be offset by Defendant's payments to Plaintiff and the Collective Members for non-compensable work time.

k.  Plaintiff will not be able to establish that Defendants' alleged violations were willful.

l.  Plaintiff and the putative Collective Members will not be able to recover liquidated damages.

(Exh. B, Stoops Decl. at ¶ 37).

In light of Plaintiff's claims and Defendant's defenses, their can be no question that a bona fide dispute existed between the Parties.

**(ii)  The Settlement is fair and reasonable based on the attendant risks of continued litigation.**

"The Settlement Agreement was reached as a result of a contested litigation to resolve bona fide disputes—both factual and legal disputes that remain unresolved." *Forauer v. Vt. Country Store, Inc.*, 2015 U.S. Dist. LEXIS 5604, *15-16 (D. Vt. Jan. 16, 2015) (upholding fairness of settlement where the parties were represented by counsel, there was a bona fide dispute, and the settlement was fair and reasonable); *see also Bozak v. FedEx Ground Package Sys., Inc.*, 2014 U.S. Dist. LEXIS 106042, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014) (approving FLSA settlement and noting that settlement was reached after negotiations concerning "the uncertain legal and factual issues involved").

Additionally, the claims were investigated both factually and legally by both sides. (Exh. B, Stoops Decl. at ¶¶ 18-21).

And while both sides in this litigation believe they have meritorious positions, both concede that their positions are subject to considerable risk as to damages. In particular, a trial on the merits would involve significant risks to Plaintiffs in light of the defenses available to Defendant and the difficulty in demonstrating that the amount  of time actually worked by the Collective Members was not *de minimis*.

The $99,999.99 settlement equates to 114.2% to 153.8% of Defendant's $64,990 to 87,538 damage exposure. (*Id.* at ¶ 43).  The parties have determined that this amount represents a reasonable compromise of the claims. "Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas v. Kmart Corp.,* 234 F.R.D. 688, 695 (D. Colo. 2006); *see*

*also Marcus v. Kansas Dept. of Revenue*, 208 F.Supp.2d 1179, 1183 (D. Kan. 2002). Here, Collective Counsel and Defense Counsel have arrived at an arms' length negotiated settlement which provides benefits to both Parties. Counsel for the Parties are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates such uncertainty in a fair and reasonable manner.

The law favors compromise and settlement of collective and class action suits. *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014); *American Employers' Ins. Co. V. King Resources Co.*, 1975 U.S. Dist. LEXIS 12910, *11 (D. Colo. Apr. 10, 1975) ("there is a strong public policy favoring equitable settlements of complex, multi-party litigation which might otherwise consume many months of court time over a period of years").

Accordingly, the settlement falls within the range of reasonableness and justifies approval.

**C.    The Requested Attorneys' Fees, Costs, Incentive Payments and Administration Costs Are Fair and Reasonable and Should be Awarded.**

**1.    The Requested Attorneys' Fees are Fair and Reasonable and Should be Awarded.**

As a result of the Settlement, and as provided for in the Amended Settlement Agreement, Class Counsel is seeking attorneys' fees in the amount of 33 1/3% ($33,333.33) of the Total Settlement Amount ($550,000). This request is fair and reasonable under the applicable law in this Circuit.

In class actions where a common fund is created for settlement, the majority of courts, including the Tenth Circuit, apply a "percentage of recovery" or "percentage of the fund" approach to fee awards. *See Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Uselton v. Commercial*

*Lovelace Motor Freight, Inc.,* 9 F.3d 849, 853 (10th Cir. 1993). At 33 1/3 percent of the fund, the proposed fee award in this case would be well within the range of reasonable percentage fee awards in this Circuit. *See, e.g., Whittington v. Taco Bell of Am., Inc*., 2013 WL 6022972, *6 (D. Colo. Nov. 13, 2013) ("Together the fees and costs amount to approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award."); *See Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.*, 2010 WL 5387559, at *5-*6 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.").

In assessing the reasonableness of attorney fee awards in class actions, courts within the Tenth Circuit have considered twelve factors identified by the Fifth Circuit in *Johnson v. Georgia Housing Express, Inc.* 488 F.2d 714 (5th Cir. 1974). The Johnson factors include: (1) the time and labor required, (2) the novelty and difficulty of the question presented by the case, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorneys due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the client relationship, and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. "[R]arely are all of the *Johnson* factors applicable." *Uselton*, 9 F.3d at 854. The applicable *Johnson* factors are addressed generally throughout this motion. Collective Counsel will address below a few of the factors in support of an award of the requested fee.

**Time and Labor Required.** To date, Collective Counsel has expended over 95 hours and $40,000 in lodestar in prosecuting this case and bringing it to a successful settlement and

conclusion. (Exh. B, Stoops Decl. at ¶ 52). It is anticipated that at the conclusion of this case (including additional work to be performed at the Final Approval stage, and extensive work related to settlement administration and Collective Member payment processing), that Collective Counsel will have accumulated a lodestar in a minimum amount of $50,000 that, based on the requested fee amount, will result in a negative multiplier. (*Id.*). Collective Counsel's negative multiplier demonstrates the appropriateness of the requested fees.

"[C]ounsel who create a common fund for the benefit of a class are rewarded with fees that often are at least two times the reasonable lodestar figure, and in some cases reach as high as five to ten times the lodestar figure." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d at 1151 (D. Colo. 2009); *see also* Newberg, *Attorney Fee Awards,* § 14.03 at 14-5 (1987) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."); *Rabin v. Concord Assets Group, Inc.*, No. 89 Civ. 6130, 1991 WL 275757 (S.D.N.Y. 1991) (4.4 multiplier) ("In recent years multipliers of between 3 and 4.5 have become common.") (internal quotations and citations omitted).

In sum, the "time and labor" factor supports the proposed fee award.

**Novelty and Difficulty of the Case and Expertise of Legal Counsel.** Collective Counsel drafted the complaint which included careful litigation strategy of claims under the FLSA. This case involved unique facts where the alleged unpaid time period ultimately only minutes of alleged off-the-clock work per day. The recovery per employee was therefore limited by the amount of time the collective members purportedly worked off the clock – which cannot be documented by any evidence other than direct testimony. Fashioning a litigation strategy and settlement under these set of facts presented unique challenges. Moreover, Defendant presented multiple defenses as discussed *supra*.

The skill requisite to perform the legal service properly also supports the award of attorneys' fees, as collective action overtime cases tend to "involve a specialized area of the law which is often complex and difficult, where some degree of extra skill is needed to litigate the cases properly." *Farley v. Family Dollar Stores, Inc.*, No. 12-CV-00325-RM-MJW, 2014 WL 5488897, at *4 (D. Colo. Oct. 30, 2014).

**Preclusion of Other Employment by the Attorneys.** As discussed above and provided in the attached declaration of Mr. Stoops, Collective Counsel dedicated over 95 hours to this case over the last two and one-half years. (Exh. B, Stoops Decl., at ¶ 55). As a result of the time spent on this matter, Collective Counsel's ability to accept and work on other cases was impeded. Thus, this factor also weighs in favor of the fee request.

**The Amount Involved and the Results Obtained.** The $99,999.99 settlement represents a positive recovery on behalf of the collective. In fact, the Total Settlement Amount equates to 114.2% to 153.8% of Defendant's $64,990 to 87,538 damage exposure. (Exh. B, Stoops Decl., at ¶ 43). Thus, this factor also weighs in favor of the fee request.

**Customary Fee / Awards in Similar Cases.** Class Counsel seeks to be paid 1/3 of the settlement fund as its contingent fee in this matter. In contingent class action cases, a 1/3 contingent fee is normal and routine. *See e.g. Lucken Family Ltd. P'ship, LLP v. Ultra Resources, Inc.*, 2010 WL 5387559, *5-6 (D. Colo. Dec. 22, 2010) ("The customary fee award to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."); *Horton v. Leading Edge Mktg. Inc.*, , , *3 (D. Colo. Feb. 4, 2008) (noting that "[m]ost fees" range "between 20% and 40% of the gross monetary settlement."); *see also In re Safety Components, Inc. Sec. Litig.*, 166 F Supp. 2d at 102 (granting award of 33 1/3% in common fund case and citing to ten cases holding the same).

Thus, the fee request here is customary.

**Whether the Fee is Fixed or Contingent.** The risk of nonpayment to Plaintiff and the Putative Collective Members was high in this case. As discussed above, this case poses a number of factual and legal issues, which created risks as to both liability and damages. Despite these risks, Collective Counsel took this case on a pure contingency, and would have received no compensation if they did not obtain a positive result for the Collective.

Thus, there was substantial risk of Collective Counsel receiving no compensation for their time, as well as risk the expenses incurred for the benefit of class members would go unreimbursed. Thus, the contingent nature of Collective Counsel's representation also weighs in favor of awarding the requested fee.

**The "undesirability" of the case.** A case is undesirable when it requires a significant time and financial investment coupled with risk of no payment. *See In re Shell Oil Refinery*, 155 F.R.D. 552, 572 (E.D. La. 1993). Here, Class Counsel spent north of 95 hours litigating this matter for over more than a year. Collective Counsel has also spent almost $2,000 in out-of-pocket costs litigating this matter. Due to the contingent nature of Collective Counsel's representation, such cost and time would have been lost if there was no recovery for the class.

Thus, this factor also weighs in favor of the fee request.

2.      **The Litigation Expenses Incurred in Prosecuting this Action are Reasonable and Should be Awarded.**

In addition to attorneys' fees, Collective Counsel is seeking reimbursement of reasonable and necessary litigation expenses not to exceed $2,000. To date, Collective Counsel has incurred $1,954.88 in necessary and reasonable litigation costs.  The litigation expenses incurred are reflected on the books and records of Collective Counsel, are available for submission to the Court upon request, and a final amount will be submitted to the Court in connection with Collective Counsel's

Final Approval briefing. All the expenses were reviewed by me and are reasonable, necessary, and customary for FLSA and state wage and hour cases. They were all incurred in the normal course of litigation, directly benefited the Collective Members, and added to the overall success of this case. (Exhibit B, Stoops Decl., at ¶ 58).

### 3.    The Service Awards are Fair and Reasonable and Should be Awarded.

"The Courts of Appeals consistently assert that incentive awards for class representatives are justified to give incentive to a class representative to come forward when none are forthcoming, and to compensate a class representative for risks they take and work they perform on behalf of the class." *Robles v. Brake Masters Sys., Inc*., 2011 WL 9717448, at *5 (D.N.M. Jan. 31, 2011). "[Incentive] awards are particularly appropriate in the employment context," where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 187 (W.D.N.Y. 2005). In particular, a former employee-plaintiff's future employment "recommendation may be at risk by reason of having prosecuted the suit," and a former employee-plaintiff thus "lends his or her name and efforts to the prosecution of litigation at some personal peril." *Roberts v. Texaco, Inc*., 979 F. Supp. 185, 201 (S.D.N.Y. 1997). Indeed, this peril has only intensified in the Internet age, as class actions are revealed when a hiring manager types the name of a lead plaintiff into Google.

Named plaintiffs risk liability for attorney fees and costs in the event sanctions are awarded or in the event of a Rule 68 offer of judgment. *See Wade v. Kroger Co*., No. 3:01CV-699-R, 2008 WL 4999171, at *13 (W.D. Ky. Nov. 20, 2008) (awarding incentive payment to named plaintiffs based in part on their "assumption of the risk that awardable litigation and other costs might be

assessed against them"). Employee-plaintiffs are also at heightened risk of facing counterclaims, due to their prior relationship with the defendant. Notably, the risk of creating professional plaintiffs or "bounty hunters" is very low in the realm of employment class and collective actions, as "an employee or applicant must have been subjected to particular practices and fit the particular employer requirements for the job." Nantiya Ruan, Bringing Sense to Incentives: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions, 10 Emp. Rts. & Emp. Pol'y J. 395, 415 (2006).

Named Plaintiff Yvette Pichler and Opt-in Plaintiff Yessenia Abrams worked diligently to assist Collective Counsel in their activities during the pendency of this litigation.  In particular, both Ms. Pichler and Ms. Abrams took part in multiple interviews, and provided records and documentation to Collective Counsel. Ms. Pichler was counseled on the rights and responsibilities of serving as a collective representative, and agreed to serve in that capacity in the filing of Plaintiff's Complaint. There are no conflicts between Ms. Pichler, Ms. Abrams or Collective Counsel and other members of the Collective. Mr. Pichler satisfied her obligation as collective representative. Ms. Pichler and Ms. Abrams incurred many hours in service to this case and the Collective Members, and were invaluable in developing the claims, conducting discovery into them, and in reaching the Settlement that is before the Court for approval.  (Exhibit B, Stoops Decl., at ¶ 54).

The requested amount of $2,000 to be allocated to Ms. Pichler and $750 to be allocated to Ms. Abrams for service awards is commensurate with other service awards I have been involved in nationally and, as documented by research of other similar awards, is reasonable under the circumstances. (*Id.* at ¶ 55).

### 4. The Settlement Administration Fees are Reasonable and Should be Awarded.

The collective will be serviced by professional services provider Atticus Administration, LLC, who will serve as settlement administrator. Atticus Administration, LLC, has been approved by Courts across the country and is perhaps the leading settlement administrator for class actions in the country. Collective Counsel have used its services in numerous settlements of this nature and found its services exemplary. (Exh. B, Stoops Decl. at ¶ 56).

Estimates provided by Atticus Administration, LLC, indicate that settlement administration for this case will not exceed $6,900. The amount is reasonable given the number of individuals involved in the Settlement. A final amount will be submitted to the Court in connection with Collective Counsel's Final Approval briefing. (*Id.* at ¶ 57).

## IV.  CONCLUSION

Based on the foregoing arguments and authorities, the Plaintiff respectfully requests that the Court enter an Order (1) preliminarily certifying the collective claims for settlement purposes only under 29 U.S.C, §§ 201, *et seq.*; (2) preliminarily approving the Parties' Settlement; (3) preliminarily appointing Plaintiff as the representative of, and Sommers Schwartz, P.C. and Hollingsworth Law, LLC as counsel for, the Settlement Collective Members; (4) approving the Parties' proposed form for providing Notice of the Collective Action Settlement and Opt-In/Objection Periods to the Putative Collective Members; and (5) scheduling a hearing on the final approval of the Settlement and approval of the application of Collective Counsel and Plaintiff for the requested attorneys' fees, litigation expenses, and service awards. (A copy of the proposed Order is attached at Exhibit C).

Dated: February 7, 2025                Respectfully Submitted,

                                        */s/ Kevin J. Stoops*
                                        Kevin J. Stoops
                                        Paulina R. Kennedy
                                        SOMMERS SCHWARTZ, P.C.
                                        One Towne Square, 17th Floor
                                        Southfield, Michigan 48076

Tel: 248-355-0300
kstoops@sommerspc.com
pkennedy@sommerspc.com

April L. Hollingsworth
HOLLINGSWORTH LAW OFFICE, LLC
1881 South 1100 East
Salt Lake City, Utah 84105
Tel: (801) 541-6600
april@aprilhollingsworthlaw.com

*Attorneys for Plaintiff and the
Putative Collective/Class Members*

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2025, I electronically filed the foregoing with the

Clerk of the Court using the ECF system, thereby serving all counsel of record.

/s *Kevin J. Stoops*
Kevin J. Stoops